Sobrino de Izquierdo, Inc., demandante y apelante, *v.* Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelado.

Núm. 7572.—*Sometido:* Junio 10, 1938. *Resuelto:* Junio 14, 1939.

*R. Díaz Collazo* y *Fiddler, Córdova & McConnell,* abogados de la apelante; *Hon. Procurador General B. Fernández García* y *Emilio de Aldrey, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Sobrino de Izquierdo, Inc., apela de una sentencia adversa dictada en un pleito sobre devolución de contribuciones pagadas bajo protesta. Hay dos leyes envueltas. La primera de ellas fué aprobada el 15 de mayo de 1936. Es conocida con el nombre de "Ley de Bebidas Alcohólicas" (Ley núm. 115 de 1936, (1) pág. 611). La segunda fué aprobada el 30 de junio de 1936. Es conocida con el nombre de "Ley de Espíritus y Bebidas Alcohólicas" (Tercera Legislatura Extraordinaria, Ley núm. 6, pág. 45). La cuestión aquí envuelta es si Tuborg Double Stout, que es un tónico de malta importado, estaba sujeto al pago de la contribución.

Al comenzar el juicio las partes estipularon que Tuborg Double Stout contenía dos décimos del 1 por ciento de alcohol por volumen, y que era un producto de malta. La prueba del demandante tendió a demostrar que:

Tuborg Double Stout es recetado por los médicos a la mujer durante el período de gestación, a las personas débiles y a los niños; a personas que requieran un tratamiento que sea tónico y al mismo tiempo nutritivo, por la gran cantidad de malta que contiene; las bebidas alcohólicas son perjudiciales a la mujer durante el período de gestación. El tanto por ciento de alcohol que Tuborg contiene

es tan pequeño que resulta inofensivo. Tuborg se usa solamente como tónico y como producto alimenticio. Dos décimas del 1% de alcohol equivalen a alrededor de cuatro gotas de alcohol por vaso. El primer paso en la fabricación de un tónico de malta es la germinación de la cebada y la adición de lúpulo. A esto sigue la fermentación y luego la desalcoholización del producto. El alcohol se elimina en su casi totalidad a excepción de una pequeña cantidad que es imposible eliminar.

Tuborg se vendía en botellas que llevan una etiqueta en que se hace constar el hecho de que no tiene alcohol. También en la etiqueta se prescribe la dosis.

El demandado no presentó prueba.

La médula del argumento de la apelante es la siguiente:

El fin de la ley fué reglamentar e imponer una contribución a la producción y venta de bebidas alcohólicas. No fué el espíritu de la ley fijar impuestos a productos como el Tuborg Double Stout. Tuborg no es una bebida alcohólica sino un tónico, un producto medicinal y alimenticio.

La necesidad de reglamentar la fabricación y venta surgió de la derogación de la Enmienda XVIII, de la Ley Volstead y de ciertas disposiciones de nuestra Carta Orgánica. De ahí que se aprobara la ley "Para proveer rentas para El Pueblo de Puerto Rico mediante la imposición de ciertos derechos de rentas internas sobre cada litro de cervezas, vinos o sustitutos de los mismos, que se introduzcan, fabriquen, usen, vendan, o que de otro modo se disponga de ellas para el consumo en Puerto Rico; y de ciertas licencias sobre determinadas ocupaciones o industrias relacionadas con tales productos, y para ingresar dicha contribución o derechos en los fondos generales del Tesoro Insular, y para otros fines." (Leyes de 1933, pág. 207.) Ésta fué seguida por otras leyes incluyendo las dos de 1936. La ley de 1933 llenó el vacío dejando en nuestras leyes contributivas al derogarse la prohibición. Impuso contribuciones sobre cosas que no estaban previamente gravadas por haber estado su fabricación y venta prohibidas. No fué el fin primordial de la Legislatura de 1936 imponer contribuciones sobre artículos que habían sido objetos legítimos de comercio durante la época de la prohibición. Las leyes de 1936 no pretenden gravar productos medicinales o alimenticios que contienen alcohol. Tuborg es un producto medicinal y nutritivo. No se usa como bebida alcohólica, aunque contiene un

pequeño tanto por ciento de alcohol. No cae dentro de la definición de cerveza, contenida en la sección 3 de la ley aprobada el 15 de mayo de 1936, a pesar del hecho de que aparentemente está dentro de la letra de esa definición por ser un producto fermentado de malta y contener alcohol. Esa definición debe interpretarse a la luz de la intención legislativa de no incluir productos medicinales que de ordinario no son considerados como 'bebidas alcohólicas. No fué la intención de la legislatura gravar los productos medicinales: primero, porque no obstante los cientos de medicinas que contienen alcohol con frecuencia en grandes proporciones, la ley no grava ningún producto medicinal conforme demuestra su artículo 4; segundo, porque los antecedentes históricos de la legislación que siguió a la Ley Volstead demuestran la intención legislativa de gravar las bebidas alcohólicas cuya venta era ilícita durante la vigencia de la prohibición, mas no las medicinas que contengan alcohol y cuya venta nunca había estado prohibida; tercero, porque el artículo 21 de la propia ley exime expresamente del pago del impuesto a los espíritus destilados que se utilizan en la composición y preparación de medicinas y productos alimenticios. La Asamblea Legislativa no creyó necesario declarar exentos de contribuciones los productos medicinales en sí, ya que el artículo 4 de la ley no fija impuesto alguno a tales productos.

Desde que se derogó la prohibición, no hay que mirar con sospecha los productos medicinales que contienen alcohol. El que fabrica, vende o consume una bebida alcohólica ya no tiene que esconderse. No pueden atribuirse al fabricante, vendedor o consumidor propósitos siniestros. Si bien es cierto que el *brandy, whisky* y otras bebidas alcohólicas tienen ciertas propiedades medicinales, las tienen precisamente por el alcohol que contienen. Las propiedades medicinales de Tuborg son independientes de su contenido alcohólico. Las propiedades medicinales del *whisky* y *brandy* son secundarias. Dichos productos son fundamentalmente bebidas alcohólicas. Como tales se venden y se consumen. El producto Tuborg no tiene característica alguna de bebida alcohólica en el sentido usual de la palabra. Es exclusivamente un producto medicinal y alimenticio. Se agotan los recursos de la ciencia para eliminar el alcohol. Cuando hay duda en cuanto a si algún artículo está o no sujeto al pago del impuesto, la duda debe resolverse en sentido favorable al contribuyente. *P. R. Distilling Co.* v. *Tesorero*, 32 D.P.R. 576.

El artículo 4 de la ley aprobada en mayo 15, 1936, fija una contribución:

"4.—Sobre toda cerveza, *'lager beer', ales, porters,* malta y extractos de malta y otros productos análogos, fermentados o no fermentados, cuyo contenido alcohólico sea de 1½ por ciento o menos por volumen, un impuesto de 15 centavos por galón y en proporción igual por fracción de galón; *Disponiéndose,* que cuando el contenido alcohólico de dichos productos exceda de 1½ por ciento por volumen, el impuesto será de 30 centavos por galón y en proporción igual por fracción de galón; *Disponiéndose, además,* que si dichos productos contuvieren más de 1½ por ciento de alcohol por volumen y se vendieren en envases de cinco (5) galones o más, el impuesto será de 20 centavos por galón y en proporción igual por fracción de galón."

El artículo 7 fija una licencia a los traficantes al por mayor y al detall de bebidas alcohólicas.

La cerveza y las bebidas alcohólicas son definidas por el artículo 3 en la siguiente forma:

"(12) *Cerveza.*—Comprende cualquer bebida fermentada o no fermentada de cualquier nombre o descripción, fabricada de malta, total o parcialmente, o de cualquier substancia de la misma que contenga alcohol."

"(15) *Bebida alcohólica.*—Comprende todos los espíritus, espíritus rectificados, cervezas y vinos que han sido reducidos a una prueba potable para el consumo humano."

El artículo 21 dispone:

"Artículo 21.—Los impuestos prescritos por esta ley no se aplicarán a los espíritus destilados obtenidos de acuerdo con aquellas disposiciones que el Tesorero prescriba para los mismos cuando se usen para fines industriales en la fabricación de alcohol desnaturalizado, preparaciones medicinales, farmacéuticas, antisépticas y de tocador, la composición y preparación de medicinas, extractos para dar sabor, sirops y productos alimenticios; ni cuando se usen para fines científicos, químicos, mecánicos, e industriales, siempre que dichos productos no sirvan para preparar bebidas alcohólicas."

El párrafo cuarto del artículo 4, supra, aparece de nuevo en forma algo más elaborada como subincisos (*a*), (*b*) y (*c*) del párrafo cuarto del artículo 4 de la Ley núm. 6 aprobada

el 30 de junio de 1936. Las bebidas alcohólicas y la cerveza son definidas nuevamente por los párrafos 13 y 15 del artículo 3 de la ley posterior, así:

"(13) *Bebida alcohólica:* Se entenderá por tal todos los espíritus y espíritus rectificados que han sido reducidos a una prueba potable para el consumo humano y los licores y bebidas que contengan alcohol, ya sean producidos por fermentación o destilación, incluyendo vinos, cervezas y cidras."

"(15) *Cerveza:* Significa cualquier bebida fermentada o no fermentada con cualquier nombre o descripción, fabricada, total o parcialmente, de malta o de cualquier sustituto de la misma, que contenga alcohol."

El artículo 21 de la primera ley aparece nuevamente como el artículo 25 de la segunda. Ahora lee:

"Los impuestos prescritos por esta ley no se cobrarán por aquellos espíritus destilados despachados por una destilería y obtenidos por cualquier persona de acuerdo con las disposiciones reglamentarias que el Tesorero prescribiere, con el fin de ser destinados a fines industriales, científicos, medicinales o químicos."

Tuborg es una bebida fermentada. Es fabricada de malta. Contiene alcohol. Es "cerveza" dentro del significado de esa palabra, conforme la misma es definida por el estatuto. Es una "cerveza" que ha sido reducida a una prueba potable para el consumo humano. Es una bebida que contiene alcohol y que es producida por fermentación. Es tanto cerveza como bebida alcohólica, según ambos términos son definidos dos veces por la Asamblea Legislativa en dos leyes sucesivas. Sea ello como fuere, es un extracto de malta o un producto similar fermentado, cuyo contenido alcohólico es menos del 1½ por volumen. En su consecuencia está sujeto a la contribución impuesta por el párrafo 4 del artículo 4 de la primera ley y por el subinciso (*a*) del párrafo 4 del artículo 4 de la segunda ley.

██ Tuborg Double Stout no es un "espíritu destilado". No es "obtenido de acuerdo con aquellas disposiciones que

el Tesorero prescriba''. No es utilizado en la fabricación de productos medicinales o en la preparación y manufactura de medicinas y productos alimenticios. Tampoco nada hay que demuestre que los productos en que así pudiera usarse Tuborg ''no sirvan para preparar bebidas alcohólicas.''

El artículo 25 de la ley posterior exime ''aquellos espíritus destilados . . . destinados a fines . . . medicinales, despachados por una destilería y obtenidos por cualquier persona de acuerdo con las disposiciones reglamentarias que el Tesorero prescribiere.'' La ''cerveza . . . extracto de malta, y otros productos análogos fermentados'' especificados en el subinciso (a) supra, no están exentos bajo los términos del artículo 25 al ser ''destinados a . . . fines . . . medicinales''. Si el extracto de malta u otros productos análogos que contienen determinado tanto por ciento de alcohol—destinados y utilizados tan sólo para fines medicinales y que no pueden ser clasificados como cerveza o bebidas alcohólicas en el sentido ordinario y corriente de esos términos—deben estar exentos de contribuciones, es cuestión a determinarse por la Asamblea Legislativa y no por los tribunales.

El argumento de la apelante es bastante plausible o lo sería, si hubiera alguna duda sobre el significado del lenguaje usado en las dos leyes. Ese lenguaje, sin embargo, es enteramente claro. No deja lugar a duda o a interpretación. Cuanto hemos dicho resuelve los señalamientos primero y segundo.

El tercer y último señalamiento se refiere a la admisibilidad de cierta prueba excluída por el juez de distrito. Dado el criterio que hemos formado del caso, el error, de existir, no resulta perjudicial.

*La sentencia apelada debe ser confirmada.*

Los Jueces Asociados Sres. Travieso y De Jesús no intervinieron.