RAMÓN EMILIO IRIZARRY, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

Núm. 1108.—*Sometido:* Noviembre 2, 1942. *Resuelto:* Noviembre 18, 1942.

*José Sabater,* abogado del recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Los Estados Unidos de América, representado por el Jefe
de la "Puerto Rico Hurricane Relief Loan Section", de la
División de Territorios y Posesiones Insulares del Departa-
mento del Interior de los Estados Unidos de América, como
sucesora de la "Puerto Rico Hurricane Relief Commission,"
otorgó una escritura cancelando una hipoteca de $2,500 de
que era deudor el aquí recurrente Ramón Emilio Irizarry.
Dicha hipoteca gravaba varias fincas del deudor situadas en
la demarcación del Registro de la Propiedad de Mayagüez
y una finca que correspondía al Registro de la Propiedad de
San Germán. Presentada la escritura al Registro de Maya-
güez se inscribió la misma sin que el registrador exigiese el
pago de derecho alguno pero el Registrador de San Germán
exigió que se pagaran los derechos de inscripción y al ne-
garse el recurrente a pagarlos solicitó que se suspendiera la
inscripción y así lo hizo el registrador por medio de una nota
que en lo pertinente dice así:

"SUSPENDIDA la inscripción de la cancelación de hipoteca que com-
prende el documento que precede, en cuanto a la finca letra 'A', única
perteneciente a la demarcación de este Registro, por no haberse con-
signado por el presentante ni por la parte interesada, los derechos
requeridos que con arreglo a la Ley Núm. 113 de mayo 6 de 1941, . . ."

La única cuestión planteada en este recurso es si la
inscripción de una escritura otorgada por los Estados Uni-
dos de América cancelando una hipoteca que fué constituída
para garantizar un préstamo concedido por la Puerto Rico
Hurricane Commission de acuerdo con la Resolución Con-
junta núm. 74 del 70 Congreso (45 Stat. 1067), aprobada en
diciembre 21 de 1928, a un agricultor para la rehabilitación
de sus fincas afectadas por el huracán de 1928, conlleva el
pago de los derechos arancelarios provistos por ley.

Las leyes aprobadas por la Legislatura de Puerto Rico
en relación con estos casos, son las siguientes:

Por la Ley núm. 1, aprobada el 12 de marzo de 1929 ((1)
pág. 123), se eximió del pago de derechos cualquier escritura

u otro instrumento otorgado ante notario público a favor de los Estados Unidos de América de acuerdo con la Resolución Conjunta núm. 74, supra.

La Ley núm. 52 aprobada el 25 de abril de 1931 (pág. 391) "para eximir del pago de derechos las inscripciones de las escrituras otorgadas a favor de los Estados Unidos de América", cuyos artículos 1 y 2 leen así:

"Artículo 1.—Que las escrituras u otros instrumentos otorgados a favor de los Estados Unidos de América, de conformidad con, o a virtud de la Resolución Conjunta del Congreso, titulada, 'Para el Auxilio de Puerto Rico', aprobada el día 21 de diciembre de 1928, serán inscritas en los Registros de la Propiedad de esta Isla libre de los derechos, prescritos por ley, para las operaciones de tales registros.

"Artículo 2.—Esta Ley tiene efecto retroactivo, extendiéndose sus disposiciones a todos aquellos contratos de las circunstancias expresadas en la sección anterior."

Sostiene el registrador recurrido que de acuerdo con estas leyes están exentas del pago de esos derechos las escrituras otorgadas *a favor* de los Estados Unidos de América, pero que la escritura de cancelación de una de estas hipotecas, siendo a favor del deudor, no lo está. La frase "a favor de" la interpreta el recurrido como "a beneficio de" y arguye que la garantía hipotecaria de estos casos se constituyó a beneficio del acreedor, los Estados Unidos de América, mientras que su cancelación a quien beneficia es al deudor.

Por su parte, el recurrente sostiene que la intención de la Legislatura de Puerto Rico fué la de liberar del pago de derechos, de acuerdo con el artículo 2 de la Ley 52, supra, todos los contratos otorgados por los Estados Unidos de América en relación con la mencionada ley de auxilio.

No tiene razón, a nuestro juicio, el recurrente, porque si bien en el artículo 2, supra, se le da carácter retroactivo a la ley sólo se extienden sus disposiciones a todos aquellos contratos *"de las circunstancias expresadas* en la sección anterior" y ya hemos visto que dicha sección expresamente se

refiere, únicamente, a las escrituras u otros documentos otorgados "a favor de los Estados Unidos de América".

Arguye, además, el recurrente, que el fin de la exención fué proteger a los agricultores arruinados por el huracán de 1928, tanto en el otorgamiento e inscripción de las escrituras en que se constituyeron las hipotecas, como en la inscripción de su cancelación. Si ésta fué la intención del legislador, no la expresó en las leyes que hemos citado en tanto en cuanto a là inscripción de una escritura de cancelación de hipoteca otorgada por los Estados Unidos de América a favor del deudor, como lo es la que fué objeto de la nota recurrida. Cuando la letra de la ley es clara y libre de toda ambigüedad la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu, dispone el artículo 14 de nuestro Código Civil, y en el caso de autos, el artículo 1 de la Ley 52, supra, es perfectamente claro y no da lugar a ambigüedad alguna. Tampoco la hay en la escritura presentada al registro, que por su propio título es otorgada por "Los Estados Unidos de América a favor de don Ramón Emilio Irizarry y Gandulla".

Es cierto que no es el título que se le ponga a una escritura, como no lo es el de una acción judicial, lo que determina la naturaleza del contrato otorgado o de la acción ejercitada. Empero, en el caso que resolvemos, tratándose de una escritura de cancelación de hipoteca, en la que los Estados Unidos de América cancelan la garantía que el deudor Irizarry les había otorgado por el préstamo recibido, no puede haber duda de que es a favor del deudor quien así obtiene que se liberen sus fincas de los gravámenes que sobre ellas pesaban.

A la ley de exención que interpretamos no puede dársele el alcance que pretende el recurrente, pues equivaldría a sostener judicialmente que donde dice "escrituras u otros instrumentos otorgados a favor de los Estados Unidos de América" debe interpretarse que dice "escrituras u otros instrumentos otorgados por los Estados Unidos de América."

Por la cancelación de una hipoteca inscrita en el Registro se extingue el derecho que tenía el acreedor sobre la finca hipotecada y el deudor adquiere el derecho de liberar su finca de la obligación a que estaba afecta. Como dice Morell en sus Comentarios a la Legislación Hipotecaria, tomo 3, página 366, "La extinción representa la pérdida del derecho, pérdida que equivale en principio a un acto de enajenación o disposición . . ." Véase además 3 Galindo y Escosura, Ley Hipotecaria, 10. Esa enajenación se hace a favor del deudor y, siendo así, no puede sostenerse con propiedad que la escritura de cancelación sea una a favor del acreedor, en este caso los Estados Unidos de América.

Cuando la Legislatura de Puerto Rico ha querido exentar del pago de derechos de inscripción tanto la constitución de una hipoteca a favor de una agencia del Gobierno de los Estados Unidos de América como la cancelación de dicha obligación, lo ha hecho en forma expresa según lo demuestra la Ley núm. 311 aprobada el 15 de mayo de 1938 (pág. 573), que en lo pertinente de sus artículos 1 y 2 dispone lo siguiente:

"Artículo 1.—Que todo documento público o privado otorgado para los efectos de contratar y garantizar préstamos hipotecarios o de cualquier otra naturaleza cuya cuantía no exceda de la suma de mil quinientos (1,500) dólares, por la Federal Land Bank of Baltimore; Federal Intermediate Credit Bank of Baltimore; Land Bank Commissioner; Production Credit Corporation of Baltimore; Puerto Rico Production Credit Association; Baltimore Bank of Cooperatives y Home Owners' Loan Corporation; Emergency Crop and Feed Loan Office y/o el Gobernador de la Administración de Crédito Agrícola; así como todo otro documento público o privado otorgado para comprobar la entrega del importe del préstamo; o el pago de dicho préstamo en todo o en parte; *así como la cancelación total o parcial de las garantías correspondientes;* y todo otro documento público o privado que sea necesario otorgarse en relación con dichos préstamos y garantías correspondientes serán autenticados por cualquier notario de Puerto Rico o funcionario público en su caso, libre de sellos

·de rentas internas prescritos por la Ley No. 31, aprobada en noviembre 30 de 1917 o por cualquier otra ley.

"Artículo 2.—Que las escrituras u otros documentos a que se refiere el artículo primero *serán inscritos en los registros de la propiedad de esta Isla libre de derechos, contribuciones, o impuestos de cualquier naturaleza prescritos por la ley para las operaciones de tales registros siempre que el importe de la operación no exceda de la suma de mil quinientos (1,500) dólares; . . .*" (Bastardillas nuestras.)

Véase como expresamente se usó la frase "todo documento público o privado otorgado . . . . *por,* etc." y no "*a fa- favor de*" y se incluyeron además los documentos otorgados para la cancelación total o parcial de las garantías correspondientes, y la inscripción de todos ellos en el registro, libre de ·derechos, contribuciones o impuestos de cualquier naturaleza. Desde luego que la inclusión en esta ley de exención del pago de contribuciones o impuestos nada implica en cuanto al arancel de los derechos a pagar en los registros, pues según resolvimos en el caso de *R. F. C. Mortgage Co.* v. *Registrador,* 60 D.P.R. 235, los sellos que en estos casos se exigen para la inscripción en el registro de la propiedad son un derecho (*fee*) y no una contribución, no violándose así la inhibición constitucional contra la imposición de contribuciones a una instrumentalidad del Gobierno Federal.

*Somos de opinión que la nota recurrida debe ser confirmada.*