SAMUEL LÓPEZ MALDONADO, representado por su tutora RAMONA VALE DE LÓPEZ, demandante y recurrido, *v.* HON. LUIS MUÑOZ MARÍN, Gobernador de Puerto Rico, HON. RAMÓN TORRES BRASCHI, Superintendente de la Policía de Puerto Rico y HON. JOSÉ R. NOGUERA, Tesorero de Puerto Rico, demandados y recurrentes.

Número 80.

*Sometido:* 3 de abril de 1959. *Resuelto:* 18 de mayo de 1959.

338

*Hon. Secretario de Justicia Hiram R. Cancio (Francisco Espi-
nosa, Secretario Interino de Justicia,* en la petición y su me-
morándum), *Arturo Estrella, Secretario Auxiliar* y *Jorge
Tomás Nido de Goenaga, Procurador Auxiliar,* abogados de
de los recurrentes; *Rodolfo F. Aponte,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opi-
nión del Tribunal.

El demandante Samuel López Maldonado se incapacitó
físicamente prestando servicio en la Policía de Puerto Rico.
Solicitó la pensión por incapacidad para el trabajo provista
en la Ley 189 de 2 de mayo de 1951 la cual le fue denegada

por el Superintendente de la Policía, y acudió entonces al Tribunal Superior reclamando el pago de la misma. Según los hechos, aceptados por las partes, a las 9:30 P. M. del día 21 de mayo de 1954, López Maldonado *trató de apresar* al individuo Efraín Quintana Feliciano a quien unas personas le imputaban el haberlas amenazado con una pistola momentos antes. Al aparecer el demandante en el sitio de los hechos Feliciano se dio a la fuga pistola en mano, y al perseguirlo, el demandante sufrió una caída recibiendo golpes en la rodilla y en la cabeza que lo incapacitaron total y permanentemente para servir en la Policía de Puerto Rico, siendo separado de la misma el 5 de octubre de 1955. A base de estos hechos sobre los cuales no hubo controversia, el Tribunal Superior dictó sentencia por las alegaciones ordenando que se pagara al demandante la pensión que determina la Ley 189 de 2 de mayo de 1951, a partir de la fecha en que se le separó del servicio.

En la solicitud de revisión los demandados recurrentes imputan error al Tribunal Superior, (Tilén, Juez) al concluir que bajo estos hechos la lesión que causó la incapacidad del demandante le da derecho a recibir la pensión provista en la referida Ley 189. Alegaron además, que en el caso de *José R. Rentas* v. *Hon. Luis Muñoz Marín y otros*, núm. 57–5800, existía una situación de hecho similar a la de este caso, resolviendo la propia Sala de San Juan del Tribunal Superior, (Calderón, Juez) que las disposiciones de la Ley 189 no eran aplicables a este tipo de accidentes. Habiendo este Tribunal accedido ya a revisar ese fallo, expedimos el auto en el presente recurso para resolver el conflicto de criterio surgido en el Tribunal Superior y establecer la pauta en lo que respecta a la aplicación de la Ley 189 a incapacidades para el servicio en situaciones tales como las ocurridas en estos casos. [1]

---

[1] En ambos casos la lesión ocurrió en circunstancias prácticamente iguales. El policía José R. Rentas sorprendió a varios individuos jugando dados. Al tratar de arrestarlos ellos se dieron a la fuga y al perseguirlos

Sostienen los recurrentes que no fue la intención legislativa cubrir bajo esta Ley 189 todos los riesgos que pudieran correr en su trabajo los policías y demás servidores de la seguridad pública incluídos en la misma, sino los riesgos extraordinarios particularmente inherentes a sus cargos y empleos; que en el caso de un policía la Ley 189 cubre sólo "aquellos daños causados como resultado *directo, violento* y *extraordinario* del acto de apresar a un delincuente o tratar de evitar la comisión de un delito"; y que en este caso hubo un mero accidente del trabajo que no tiene conexión con las circunstancias que contempla la Ley 189, y por lo tanto, debe regirse por las disposiciones de la Ley 447 de 15 de mayo de 1951. Veamos el asunto:

En la Sesión Ordinaria de la Asamblea Legislativa de 1951 se consideró y aprobó un sistema general de pensiones para los empleados públicos, la Policía de Puerto Rico inclusive, bajo las disposiciones de la Ley 447 de 15 de mayo de ese año, —3 L.P.R.A. 761. En los arts. 9 y 12 de esta ley —3 L.P.R.A. secs. 769, 772,—tal como fueron originalmente aprobados, [2] se concedió a un miembro del Cuerpo de la Policía el derecho a recibir una pensión equivalente al 50% de su sueldo, o a su viuda e hijos en caso de muerte hasta un 60%, si como resultado de una incapacidad física *originada por causa del empleo y surgida en el curso del mismo* quedare incapacitado para el servicio, o falleciere, siempre que dicha incapacidad fuera indemnizable de acuerdo con la Ley de Compensaciones por Accidentes del Trabajo; y con sujeción, además, a otras restricciones y limitaciones. En la misma Sesión la Asamblea Legislativa consideró y aprobó la Ley 189 de 2 de mayo de 1951—25 L.P.R.A. sec. 361—concediendo una pensión anual equivalente al sueldo completo a todo miembro del Cuerpo de la Policía Insular, de la Guardia Nacional, del Cuerpo de Bomberos y de la Guardia de Penales, que resultare

Rentas se cayó sufriendo una lesión en la rodilla derecha que lo dejó incapacitado totalmente para el servicio de policía.

[2] Enmendados por las Leyes 73 de 1954, 40 de 1955 y 39 de 1957.

incapacitado para continuar en el servicio, y a los beneficiarios de éstos, en caso de fallecimiento, cuando tal incapacidad o fallecimiento ocurriere bajo las circunstancias relacionadas en el *artículo 1* de dicha ley. Precedido de una exposición del legislador expresando el propósito con el cual aprobaba la Ley 189: "de proveer lo necesario para mitigar la situación de desamparo y penuria que la incapacidad para el trabajo físico o la muerte de miembros de la Policía Insular, de la Guardia Nacional, del Cuerpo de Bomberos del Servicio Insular de Bomberos y de la Guardia de Penales, dejan entre éstos o sus familiares cuando tal incapacidad o muerte sobreviene *mientras estos servidores de la seguridad pública se dedican a la defensa del respeto que se debe a la libertad de todos y a la paz con que el pueblo de Puerto Rico quiere desarrollar sus instituciones*"; y también que "[L]a Asamblea Legislativa entiende que todo servidor de la seguridad pública—sea policía, guardia nacional, bombero o guardia penal—debe tener asegurado por ley un trato igual para los suyos si pierde la vida *protegiendo la de los demás* en el desempeño honroso de su deber", (énfasis ofrecido) el *artículo 1* estatuyó que las disposiciones de dicha Ley 189 serían aplicables a casos de incapacidad para el trabajo físico o muerte "*sobrevenida bajo las siguientes circunstancias:*

"(*a*) En caso de un miembro de la Policía Insular, al evitar o al tratar de evitar la comisión de un delito, o al apresar o tratar de apresar a alguien que se pueda presumir razonablemente que está conectado con la comisión de un delito".([3])

El punto a resolver es cuál de los dos estatutos debe aplicarse a los efectos de determinar la pensión que le corresponde al recurrido, si la Ley 447, según alegan los recurrentes, o la

---

([3]) Igual disposición se hizo en el caso de un miembro de la Guardia Nacional. En cuanto a un miembro del Cuerpo de Bomberos del Servicio de Bomberos: "mientras se dedica a la extinción de un incendio *o al dirigirse a un sitio* para la extinción de un incendio". Otros artículos de la Ley dispusieron, entre otras cosas, que tales pensiones estarían exentas de embargo o ejecución y del pago de la contribución sobre ingresos; se harían

Ley 189 de 1951. De ordinario un policía u otro servidor de la seguridad pública está expuesto a riesgos y peligros contra su persona en grado mayor que otros servidores del gobierno, pero no toda la labor que un policía viene obligado a rendir lo expone en el mismo grado y extensión a tales riesgos y peligros, ni exigen de él igual celo y arrojo. Convenimos con los recurrentes en que no fue la intención legislativa cubrir bajo la Ley 189 todos los accidentes o daños que pudieran sobrevenir a un policía u otro servidor de la seguridad pública en el desempeño de su trabajo, que le incapacitaren o le produjeren la muerte. Que no hubo tal intención surge del texto mismo de la ley, y claramente del hecho de que a la vez que adoptaba esta legislación especial de pensiones para los servidores de la seguridad pública únicamente, el legislador incluyó a los policías y a los bomberos también dentro del sistema general de pensiones por incapacidad física o muerte en el empleo de la Ley 447, aplicable por igual a cualquier otro empleado público. De ahí, que al aprobar la Ley 189 juntamente con la 447, frescos todavía los hechos de sangre y de violencia que habían ocurrido en Puerto Rico meses antes, el legislador mismo hiciera la evaluación apropiada y el correspondiente desglose de aquellas actividades ocupacionales de un miembro de la seguridad pública, a diferencia de otras, que le harían acreedor en caso de incapacidad o muerte a la pensión especial más alta y en los términos más beneficiosos que concede la primera. Por la experiencia habida, el legislador pudo tener en mente no sólo el mayor grado de exposición al peligro sino también el sentido en grado sumo de sacrificio, abnegación y desprendimiento, suyo y de sus familiares, con que la sociedad exige que estos servidores la

---

en adición a cualquier compensación concedida por el Fondo del Seguro del Estado, cosa que no ocurría con la pensión bajo la Ley 447; se pagarían con cargo a los fondos generales del Tesoro para lo cual se asignaría en el Presupuesto General cada año; y que para dar cumplimiento a la ley el Departamento de Justicia tramitaría los procedimientos judiciales necesarios libre de honorarios y las demás oficinas y centros oficiales prestarían sus servicios sin pago de derechos.

defiendan y la protejan.   Al hacer esa evaluación y desglose
de funciones, la Asamblea Legislativa concluyó como cuestión
de hecho que cuando un policía se incapacita para el trabajo
o fallece *al apresar o tratar de apresar* a alguien que comete
delito o que se pueda presumir razonablemente que está
conectado con la comisión de un delito, tal policía estaba,
según reza su exposición de propósitos, dedicado a la defensa
del respeto que se debe a la libertad de todos, y estaba prote-
giendo la vida de los demás siendo acreedor, por lo tanto, a la
pensión provista en esa ley.

En realidad los recurrentes no disputan que el
recurrido se incapacitara tratando de apresar a un delin-
cuente.   Pero, invocando lo que según ellos fue la intención
legislativa, sostienen que para que sean aplicables las dispo-
siciones de la Ley 189 era necesario que la incapacidad se
produjera como resultado de algún daño directo, violento y
extraordinario del acto de apresar.   Su argumentación es que
aquí se trata de un accidente natural que ha podido ocurrir
a cualquier persona corriendo para "alcanzar una guagua";
que no medió fuerza o violencia *"extraña"* y menos por parte
de la persona que el demandante trataba de arrestar; y que
una conclusión contraria llevaría a resultados extremos por-
que un policía que "resbalara" en el baño del cuartel "al ser
llamado para sofocar un motín" podría reclamar esta pensión.

No tienen razón los recurrentes.   No se llega a los ante-
riores resultados extremos, o si se quiere absurdos, si se toman
las palabras usadas en la ley en su propio significado.
*Apresar* según el Diccionario de la Lengua Española de la
Real Academia Española, es asir, hacer presa con las garras
o colmillos, aprisionar.   *Aprisionar* quiere decir atar, sujetar.
*Tratar de* es "procurar el logro de algún fin".   Puede verse
que la ley contempló el acto eficaz de asir, agarrar o apode-
rarse de una persona para aprisionarla, y el acto eficaz de
procurar tal fin o logro;   de donde no surge lugar para las

situaciones extremas que invocan los recurrentes fáciles de distinguir a la clara vista. (⁴)

Por supuesto, en el acto de apresar o tratar de apresar a alguien puede haber violencia o la necesidad de una persecución tenaz no importa lo accidentado de la misma o podría quizás no haber violencia alguna, dependiendo de las circunstancias y de cómo se desarrollan los acontecimientos en cada caso, imposibles de predecir. El hecho de una persecución en tales circunstancias constituye un acto de por sí arriesgado y violento. Pero sea como fuere, el legislador no quiso llevar el desglose de funciones más allá de lo que aparece en el texto de la ley, ni imponer otras circunstancias y requisitos para el disfrute de esta pensión que los determinados de manera precisa. Una vez que el policía u otro servidor de la seguridad pública estuviere realizando la función incluída dentro de la circunstancia especificada, la ley no indica que al legislador le preocupara la manera en que el daño causante de la incapacidad pudiera ocurrirle. No fue tanto el tipo de daño en cada caso en particular, como la naturaleza misma de esta clase de servicio juntamente con el propósito que cumple de proteger y defender a los demás, lo que pudo inspirar la determinación legislativa, aunque el daño surja como ocurrió en este caso sin la intervención de un hecho externo de violencia. Obsérvese que la ley, que debe tomarse en todo su contexto, se hizo aplicable al bombero que se incapacita o muere no sólo en la labor azarosa de extinguir un incendio, sino también *al dirigirse a un sitio* para la extinción de un

---

(⁴) En el caso de *Francisco Rentas Salgado* v. *Estado Libre Asociado de Puerto Rico y otros*, núm. 11,903, decidido en 7 de diciembre de 1956, confirmamos sin opinión la sentencia dictada por el Tribunal Superior denegando a dicho demandante la pensión de esta Ley. Según los hechos, Rentas Salgado se incapacitó por lesiones sufridas al caerse con su motocicleta mientras se dirigía en ella hacia un sitio a poco más de un kilómetro de distancia dónde, según información que recibió de un caminero, dos obreros rompían la carretera sin exhibir permiso alguno. Concluimos con el Tribunal Superior que en ese momento el policía iba a investigar un asunto y no estaba evitando o tratando de evitar la comisión de un delito ni apresando o tratando de apresar a una persona.

incendio, pudiendo surgir el daño en ese momento como resultado de un accidente ordinario del tránsito. La diferencia con otras funciones estriba en que existe en tales actos un elemento forzoso, obligado, que impele a arrostrar el peligro como se presente y cualesquiera que sean las consecuencias para la persona, sin que ello dependa de la voluntad del agente.

No obstante, los recurrentes invocan la "intención legislativa" para sostener su interpretación de que ". . . en cuanto a los policías se refiere, los riesgos que cubre la ley son aquellos daños causados como resultado directo, violento y extraordinario del acto de apresar a un delincuente o tratar de evitar la comisión de un delito." Infieren que ése fue el propósito del legislador aduciendo dos argumentos: (1) que en el caso de los bomberos específicamente se cubrió el riesgo común de un accidente de automóvil al dirigirse a un sitio para la extinción de un incendio, y (2) que la ley se aprobó a raíz de la revuelta nacionalista en que los policías tuvieron que afrontar riesgos extraordinarios. Lo curioso es que ambos argumentos corroboran superlativamente nuestra interpretación de la ley.

La premisa implícita del primer argumento es el aforismo jurídico de que si la ley se refiere a un caso dado, se entienden excluídos los demás (*inclusio unius est exclusio alterius*). Pero esta máxima de interpretación restrictiva no es aplicable por la sencilla razón de que el sentido de la ley no admite excepciones en el caso de los policías. En efecto, con términos generales y terminantes el legislador cubrió *todos* los casos en que la incapacidad o muerte de un policía ocurra al apresar o tratar de apresar a un presunto delincuente. Y sobre todo importa subrayar que la finalidad de la ley era ". . . proveer lo necesario para mitigar la situación de desamparo y penuria . . . . cuando [la] incapacidad o muerte sobrevienen mientras estos servidores de la seguridad pública se dedican a la defensa del respeto que se debe a la libertad de todos y a la paz con que el pueblo de Puerto Rico quiere desarrollar sus instituciones . . ." De ahí que obviamente la disposición rela-

tiva a los bomberos no sea de índole excepcional. Si conside-
ramos las razones que el legislador tuvo para cubrir el riesgo
que corren los bomberos al dirigirse a un sitio para la extin-
ción de un incendio, es forzoso concluir que tampoco quiso
excluir el riesgo de caerse e incapacitarse que corren los poli-
cías al perseguir y tratar de apresar a cualquier delincuente.
Donde la razón es la misma, idéntica debe ser la norma de
derecho.

El hecho de que la Ley núm. 189 de 1951 se aprobó a raíz
de la revuelta nacionalista, no justifica una interpretación
restrictiva basada en la "intención legislativa". Al revés,
esta circunstancia indica racionalmente que el legislador tuvo
en mente cubrir todos los casos y consecuencias del peligro que
los policías tienen que arrostrar para apresar o tratar de
apresar a los delincuentes. El propósito de la ley fue sin duda
conceder la más amplia protección a estos funcionarios. Así
lo exigían los intereses y necesidades sociales en ese momento.
Por ello si el legislador hubiera querido admitir excepciones,
hubiera hecho las salvedades oportunas, en vez de expresarse
en términos generales. La única conclusión plausible es que
los motivos y finalidades que perseguía la ley en 1951, según
el criterio o concepto que mereció la aprobación del legislador,
impiden hacer distinciones entre "riesgos comunes" y "riesgos
extraordinarios", cuando la incapacidad o muerte surge
". . . al evitar o tratar de evitar la comisión de un delito, o al
apresar o tratar de apresar a alguien que se pueda presumir
razonablemente que está conectado con la comisión de un
delito."

Como hemos visto, nuestra interpretación del estatuto
armoniza el sentido literal del texto con los motivos y finali-
dades que perseguía la ley. En realidad el recurrente nos
pide que en este caso prescindamos de ambos elementos del
proceso interpretativo. Además olvida que, cuando el legis-
lador se ha manifestado en lenguaje claro e inequívoco, el
texto de la ley es la expresión por excelencia de toda intención
legislativa. Art. 14 Cod. Civil, ed. 1930, 31 L.P.R.A. 14;

2 Sutherland *Statutory Construction*, 3ra ed., sec. 4701 et seq.; Endlich, *On the Interpretation Statute*, capº I, sec. 1 et seq.; Sutherland, *Statutes and Statutory Construction*, capº XIII, sec. 234 et seq.; Black, *Construction and Interpretation of the Laws*, capº 3 pág. 51. (⁵)  En *Atiles, Admor.* v. *Comisión Industrial*, 77 D.P.R. 16, 20, expresamos que es la obligación del juzgador el hacer valer la letra de la ley, si bien no debe adoptarse una interpretación literal cuando ella resulta contraria a la intención general auténtica y al verdadero propósito del legislador y conduciría obviamente a resultados absurdos e irrazonables; y aún así, dijimos que si el legislador ha deseado tales resultados y no hay margen en el texto de la ley para imputarle otra intención que sea más racional y justa, los tribunales no deben imponer su propio criterio de justicia y razonabilidad, y deberán entonces respetar la voluntad legislativa.  Y en *Clínica Juliá* v. *Secretario de Hacienda*, 76 D.P.R. 509, 521:

"Pero esos son casos que envuelven contradicciones internas en el propio estatuto, correspondiendo entonces a los tribunales el resolver tal contradicción a base del establecimiento de la intención auténtica del legislador.  Ese propósito no debe ser el del juez, sino el del legislador, según surja del estatuto en sí. El juez es un intérprete, y no creador.  Su facultad de interpretación adquiere relevancia cuando del estatuto surgen varios significados probables que suministren un margen adecuado para selección judicial, pero si el lenguaje es tan inequívoco que postula un solo significado, un sentido cabal de humildad y autodisciplina judicial requiere la aplicación de la voluntad legislativa. Frankfurter, 'Some Reflections on the Reading of Statutes', 47 Col. L. Rev. 527; 1 Mertens 59.  Ese es un postulado del honor judicial".

Véanse: *De la Haba* v. *Tribunal de Contribuciones*, 76 D.P.R. 923, 947: Cuando el lenguaje de un estatuto [contri-

---

(⁵)*Irizarry* v. *Registrador*, 61 D.P.R. 74, 77; *Sobrino de Izquierdo, Inc.* v. *Sancho Bonet, Tes.*, 55 D.P.R. 132, 138; *Durand* v. *Sancho Bonet*, 50 D.P.R. 940, 943; *De la Rosa* v. *Winship, Gobernador*, 47 D.P.R. 330, 332; *Martínez* v. *Junta Insular de Elecciones*, 43 D.P.R. 413, 424; *Roig* v. *Bustelo*, 40 D.P.R. 606, 610; *Aponte, Jr.* v. *Atlas Com. Co.* 27 D.P.R. 245, 247

butivo] es claro, éste debe ser aplicado como la Asamblea Legislativa lo redactó y no como este Tribunal o el Secretario [de Hacienda] pudieron querer que éste leyera; *Comunidad Fajardo* v. *Tribunal de Contribuciones*, 73 D.P.R. 543, 551. En este caso dijimos al revocar al Tribunal Superior que negó el derecho a deducir ciertos intereses a los efectos de la contribución sobre ingresos, que las cortes no tienen autoridad para injertar en el lenguaje inequívoco de un estatuto lo que la Legislatura, ya fuere deliberadamente o no, eligió omitir, aun reconociendo que la aplicación de la ley según fue hecha por el tribunal inferior respondía a una política general legislativa contra la deducción de tales intereses en determinados casos especificados.

No hay razón para que intercalemos en el estatuto, lo que constituiría una invasión de la función legislativa, la circunstancia adicional de que la incapacidad debe surgir como resultado de un daño directamente infligido por la persona que se apresa o se trata de apresar atacando al policía, o por algún otro medio de violencia externo. Como expusimos en *Caguas Bus Line, Inc.* v. *Sierra, Comisionado*, 73 D.P.R. 743, 750, la Legislatura en este caso tenía pleno conocimiento del problema, máxime cuando en la misma Sesión aprobó ambos estatutos de pensiones, previó el impacto económico de esta pensión especial proveyendo para su pago con cargo al Tesoro Público sin sujeción a la solvencia de un fondo particular, y no hay porqué imponer restricciones que no están en la ley, con mayor razón, cuando es norma generalmente aplicada que las leyes de pensiones deben interpretarse liberalmente a favor del beneficiario dado el propósito reparador con que se aprueban. Black, *Construction and Interpretation of the Laws*, ch. 12, pág. 506; 3 Sutherland, *Statutory Construction*, 3rd ed., sec. 7209; *Garratt* v. *City of Philadelphia*, 127 A.2d 738 (Pa. 1956); *Sabathier* v. *Board of Trustees, Firemen's Pension and Relief Fund for the City of New Orleans*, 72 So.2d 1 (La. 1954); *Gilman* v. *City of Long Beach*, 245 P.2d 512 (Cal. 1952); *O'Brien* v. *Retirement Board, etc.*, 99

N.E.2d 681 (Ill. 1951); *Vernon et al.* v. *Firemen's Pension Fund of Philadelphia,* 52 A.2d 199 (Pa. 1947); *Prendergast* v. *Retirement Board, etc.,* 60 N.E.2d 768 (Ill. 1945); *Meyer* v. *Board of Trustees of F. Pension & R. Fund,* 6 So.2d 713 (La. 1942); *Bradley* v. *City of Los Angeles et al.,* 131 P.2d 391 (Cal. 1942); *Dillard* v. *City of Los Angeles,* 127 P.2d 917 (Cal. 1942); *Naughton* v. *Retirement Board of San Francisco,* 110 P.2d 714 (Cal. 1941); *Peters* v. *Sacramento City Employees' R. System,* 80 P.2d 179 (Cal. 1938); *Casserly* v. *City of Oakland et al.,* 12 P.2d 425 (Cal. 1932); *Buckley* v. *Roche et al.,* 4 P.2d 929 (Cal. 1931); *People ex rel. Donovan* v. *Retirement Board Policemen's Annuity and Benefit Fund et al.,* 158 N.E. 220 (Ill. 1927); *Elliot* v. *City of Omaha,* 191 N.W. 653 (Neb. 1922); *State* v. *Board of Trustees of Policemen's Pension Fund,* 119 N.W. 806 (Wis. 1909). (⁶)

■ Un último argumento de los recurrentes es que al aprobarse la Ley 127 de 27 de junio de 1958, que sustituyó a la 189 de 1951, se dispuso el requisito de ataque al policía en estos casos y que ello demuestra, junto con la derogación de la Ley 189, que tal fue siempre el propósito legislativo. La Ley 127 no tiene el alcance que se le atribuye. En primer lugar, 5 años después de estar en vigor la ley de 1951 y conocer el Legislador sus efectos, se enmendó la misma por la núm. 94 de 23 de junio de 1956 para incluir a los agentes de rentas internas en circunstancias más favorables que las relativas a los policías y que no implicaban necesariamente el afrontar un ataque personal o daño violento. En segundo lugar, la Ley 127 de 1958 no tuvo como único fin adicionar el requisito del ataque a la persona, ni en términos generales fue su pro-

---

(⁶) En los casos citados las cortes concedieron pensiones a policías y a bomberos bajo estatutos especiales similares al nuestro, rechazando, en algunos de ellos, el argumento que aquí se esgrime de la necesidad de un acto de violencia externo, aun en situaciones en que se requería que la persona muriera, o fuera muerta (*be killed*) en el desempeño de la función específica y quedó demostrado que hubo una muerte natural o por agravación de un padecimiento ya existente.

pósito restringir el alcance beneficioso del estatuto anterior, sino por el contrario, lo amplió considerablemente. Según reza el Informe de la Comisión de Elecciones y Personal de ambas Cámaras, ([7]) el propósito fue hacer una revisión total de la legislación vigente con miras a ciertas aclaraciones y suplir omisiones de carácter funcional y administrativas que se hacían necesarias. Si por un lado se adicionó el requisito del ataque físico, por otro lado se ampliaron las circunstancias en que un policía es acreedor a la pensión, incluyéndose ahora la ocasión de dirigirse al sitio de un incendio y de prestar servicio en la extinción del mismo; el intervenir en el salvamento de la vida de un semejante poniendo en peligro la suya y en la protección de la propiedad que corre peligro,—(véase el artículo 2 de la Ley 127)—situaciones éstas que según dice el Informe citado no requieren de agresión física al funcionario. En la Exposición de Motivos de esta última ley se expresa que es "[E]n reconocimiento al *riesgo* que acompaña el desempeño de las funciones de los referidos servidores públicos y como justa recompensa al celo, arrojo, lealtad y determinación que ellos despliegan en determinadas circunstancias." Podrá verse que no se trata de un estatuto meramente aclaratorio con efectos retroactivos. ([8]) Todo indica que el mismo instrumenta prospectivamente una política pública a la luz de las circunstancias prevalecientes en 1958 distintas a las que pudieron ser en 1951 a raíz de un período de convulsión y de violencia general. En ambas ocasiones el len-

---

([7]) Diario de Sesiones, Vol. X núm. 74 (Senado) pág. 1264; núm. 92 (Cámara) pág. 1973.

([8]) Ante una enmienda propuesta para retrotraer las disposiciones de la Ley 127 al año 1951 con miras, según se capta de la discusión, a favorecer a los beneficiarios, como en el caso de los guardias de penales, el dirigente de la mayoría, Hon. Arcilio Alvarado rechazó todo intento de retroactividad expresando que la enmienda "pudiera tener el efecto de *privar* de una causa de acción a una persona que la tiene actualmente, bajo la actual redacción de la ley"; y que una enmienda retroactiva, "tal vez para dar causa de acción a personas que creían no tenerla, o tal vez para privar de causa de acción a personas que la tenían", le parecía arriesgado. La enmienda fue retirada. Diario de Sesiones, Vol. X núm. 92, pág. 1989.

guaje claro e inequívoco del estatuto manifiesta por igual los fines de la ley. *La sentencia objeto de este recurso de revisión será confirmada.*