Córdova Arone, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El recurrente, el Sr. José Morales de Jesús (Sr. Morales), solicita la revocación de una resolución emitida el 28 de abril de 1998 por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Administración), mediante la cual se confirma la decisión del Administrador denegando solicitud de ajuste a una pensión por Incapacidad en el Cumplimiento del Deber conforme a la Ley Núm. 127 de 27 de junio de 1958, según enmendada, 25 L.P.R.A., see. 377.
El Sr. Morales radicó Moción de Reconsideración el 10 de julio de 1998 y la Administración no la consideró dentro del término de quince (15) días de haberse presentado.
Inconforme, el Sr. Morales ha presentado en este Tribunal el presente recurso de revisión. Habiendo la Administración presentado su posición en cuanto al recurso, estamos en condiciones de resolver.
I
Para la fecha de los hechos, el Sr. Morales laboraba como Teniente II en la Policía de Puerto Rico y como Director Interino de la Unidad de Servicios Especiales del Cuerpo de Investigación Criminal (C.I.C.) de San Juan. Dicha unidad se dedicaba a diligenciar en el área metropolitana las órdenes de arrestos por delitos graves que fueran expedidas por el Tribunal.
El 8 de enero de 1984, a eso de las 12:30 o 1:00 de la tarde, el Sr. Morales, en compañía del Teniente I, Sr. José Luis Rivera Díaz, transitaban en un vehículo oficial no rotulado por el Expreso Las Américas en dirección hacia el Cuartel General, en Hato Rey. No vestían con uniforme de policía. Un vehículo Volvo que viajaba en la misma dirección que ellos se aproximó y redujo la velocidad abruptamente. El Sr. Morales y el Sr. Rivera vieron que los ocupantes los observaban con insistencia y que uno de ellos no llevaba camisa puesta. El Volvo aceleró nuevamente a velocidad exagerada. Esta acción levantó sospecha, por lo cual decidieron seguirlos. Más adelante, después de un pequeño desvío, localizaron otra vez el Volvo que se movía entre carriles en dirección hacia el sur. El teniente Rivera activó la sirena y lograron alcanzar el auto en la luz de la salida del expreso hacia la Ave. Américo Miranda. El teniente Rivera detuvo el auto al lado del Volvo, apagó la sirena, se identificó como policía y le indicó que cuando cambiara la señal del semáforo se estacionara. El conductor del *1004 Volvo retrocedió un poco y arrancó pasando el semáforo con la luz roja. Comenzó nuevamente la persecución y en la urbanización Villa Nevárez lograron alcanzarlos e interceptarlos por la parte posterior del vehículo. Una vez detenidos, el Sr. Morales se bajó del vehículo con el revólver de reglamento en la mano y le indicó a los ocupantes del Volvo que salieran del vehículo. El conductor del Volvo, en lugar de salir del auto, se inclinó hacia el lado. Cuando el Sr. Morales vio este movimiento interpretó que el conductor estaba buscando un arma. El conductor se incorporó y el Sr. morales hizo un disparo que atravesó el cristal delantero del Volvo y alcanzó al conductor en el lado superior de la cabeza. El Teniente Rivera ayudó al conductor herido a salir del auto y el Sr. Morales registró al otro ocupante del Volvo. Luego ambos policías los llevaron al Centro Médico.
Hubo una investigación de los hechos por la División de Investigaciones y Asuntos Criminales del Departamento de Justicia y administrativamente por la Policía de Puerto Rico. El Sr. Morales declaró que disparó porque temía en esos momentos por su vida. En cambio, la posición de los ocupantes del Volvo es que huyeron de la policía porque creyeron que eran asaltantes.
Al Sr. Morales se le acusó de Tentativa de Asesinato y de violación a los Artículos 6 y 8 de la Ley de Armas. Posteriormente, se redujo la clasificación del delito a uno menos grave; negligencia en el cumplimiento del deber con un acuerdo por escrito de que sólo se impondría una multa. Esta fue de doscientos dólares ($200.00). La Policía de Puerto Rico le impuso una suspensión de empleo y sueldo por un período de noventa (90) días.
En noviembre de 1985, el Sr. Morales acudió al Fondo del Seguro del Estado alegando que sentía presión, tensión, fuerte dolor en la parte superior de la espalda hasta el cuello, no dormía bien y que su carácter había cambiado totalmente. Se le diagnosticó una condición de desorden de ansiedad, moderada a severa. El fondo denegó dicho tratamiento por entender que lo ocurrido no constituyó un accidente de trabajo; la Comisión Industrial revocó la determinación del Fondo resolviendo que el obrero sufrió un accidente de trabajo bajo las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo. Esta determinación fue confirmada en apelación ante J.A.S.A.P.
El 16 de febrero de 1996, se le concedió al Sr. Morales beneficios de incapacidad ocupacional al amparo de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, siendo dichos beneficios efectivos el 12 de julio de 1988.
' El 6 de marzo de 1996 el Sr. morales solicitó que le ajustaran la pensión conforme a la Ley Núm. 127, supra. El 11 de junio de 1996 la Administración denegó los beneficios de incapacidad ocupacional bajo la Ley 127, por no estar presentes las circunstancias que específicamente requiere la ley para que pueda concederse compensación por accidente sufrido como consecuencia de y en el curso del empleo.
II
El Artículo 2 de la Ley Núm. 127 del 27 de junio de 1958, según enmendada, 25 L.P.R.A. 377 (1) (e), la cual dispone a favor de los miembros de la policía una pensión por incapacidad contiene seis distintas circunstancias específicas para dar a un policía la cubierta que provee la Ley 127, supra. El Sr. Morales alega que solamente aplica el inciso (l)(e) que cita:

"(1) En caso de un miembro de la Policía:

(e) al intervenir en el salvamento de la vida de un semejante o para proteger propiedades que por cualquier circunstancia corrieren peligro, para la cual tuviere que arriesgar la suya propia."

Cabe señalar que la Ley Núm. 189 de 2 de mayo de 1951 sobre pensiones por incapacidad, que también fue una especial, es el estatuto originador de la Ley 127. La misma se aprobó con el propósito de proveer lo necesario para mitigar la situación de desamparo y penuria que la incapacidad para el trabajo físico o la muerte de miembros de la Policía Insular dejan entre éstos o sus familiares cuando tal incapacidad o muerte sobreviene mientras estos servidores de la seguridad pública se dedican a la defensa del respeto que se debe a la libertad de todos y a la paz con que el pueblo de Puerto Rico quiere desarrollar sus instituciones. Se les recompensa a éstos que ofrecen sus vidas para nuestra tranquilidad y para estimularlos para que sus sacrificios sean justamente compensados. Por todo esto *1005 se le da al policía este tratamiento y la pensión por incapacidad o muerte que contempla el estatuto antes referido. López v. Muñoz, Gobernador, 81 D.P.R. 337 (1959), a la pág. 341. En el citado caso se aplicó la Ley 189 y se confirmó la pensión que se le reconoció al recurrido, quien era policía y se incapacitó al sufrir una caída mientras perseguía a un imputado que se dio a la fuga luego de amenazar con una pistola a unas personas.
En Silva v. Administración de Retiros, 128 D.P.R. 256, (1991) la controversia es similar a la controversia que se nos presenta. El Tribunal Supremo analiza detenidamente el P. de S. 374 que luego se convirtió en la Ley 127. Se interpretaron los requisitos de esta ley. El recurrido era un policía estatal que llevaba a cabo un patrullaje preventivo en un vehículo oficial que conducía otro agente de la policía y, en dirección al lugar donde había ocurrido un robo, sufrió un accidente. El Tribunal concluye que el propósito de la ley es definir claramente las circunstancias en que aplicaría la protección especial que se provee y requerir que el policía hubiera sido atacado para poder beneficiarse de la misma, excepto en dos casos: al intervenir en el salvamento de la vida de un semejante o, que es el que nos ocupa ahora, para proteger propiedades que por cualquier circunstancia corran peligro, para lo cual tengan que arriesgar su propia vida. Es cierto que las disposiciones de esta ley se deben interpretar liberalmente a favor de los beneficiarios de las mismas, por ser un estatuto reparador. Pero habiéndose definido la intención del legislador y las circunstancias que aplicaría el estatuto, se impone una interpretación restrictiva respecto a la enumeración que hace el Art. 2. Silva v. Administración Sistemas de Retiro, ante, a las págs. 265-266. El vocablo "tenga", en el contexto en que es utilizado por el legislador en el mencionado artículo, implica la necesidad de exponerse a un riesgo inmediato, de carácter inminente, cuya consecuencia probable sea la muerte o grave daño corporal. No toda gestión policíaca que conlleve cierto riesgo o cierto grado de dramatismo, pone en peligro la vida del agente. Extender el beneficio de la Ley a situaciones como la de autos equivaldría a ampliar excesivamente el beneficio de la ley, desvirtuando así el propósito del estatuto. Silva v. Administración Sistemas de Retiro, ante, a las págs. 268-269. Por consiguiente se le negó la pensión especial al amparo de la Ley 127.
Tienen que darse las circunstancias especiales que fija el estatuto al enumerar taxativaménte las circunstancias que pueden hacer acreedor a un servidor público a una pensión especial. González v. Adm. de Sistemas de Retiro, 113 D.P.R. 292 (1982), a la pág. 294.
En el caso del epígrafe, es claro que de los hechos no se desprende indicios de que alguna propiedad estuviera en peligro como alega el Sr. Morales, justificación para que arriesgara su vida. Recordemos que el Sr. Morales es el que toma la decisión de perseguir el Volvo meramente por una sospecha cuando los ocupantes redujeron la velocidad y se quedaron observándolos. Mientras los perseguían en un carro oficial no rotulado, con la sirena encendida, lograron alcanzarlos. Se identificaron como policías e indicaron que se detuvieran más adelante. Ellos se fueron a la fuga, los tenientes tuvieron que perseguirlos y finalmente forzarlos a parar. Los ocupantes del Volvo declararon que pensaron los iban a asaltar y por eso corrieron. El único revólver en la escena es el del Sr. Morales, quien pensó que el chofer había cometido un delito y estaba buscando un arma al doblarse en el interior del auto y dispara hacia el conductor. Cuando el conductor se dobló en el interior no significó que alguna propiedad corría peligro en ese momento.
Por las razones expuestas, se deniega el recurso y se confirma la Resolución objeto de esta revisión. El señor José Morales De Jesús no es acreedor de los beneficios de la pensión especial provista en la Ley Núm. 127 de 27 de junio de 1958, según enmendada.
Lo acordó el Tribunal y ló certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General