JUSTO REYES, recurrente, *v.* JUNTA DE PLANIFICACIÓN DE PUERTO RICO, recurrida.

Número 38.

*Sometido:* 9 de abril de 1956. *Resuelto:* 5 de septiembre de 1956.

*Rodolfo F. Aponte,* abogado del recurrente; *Rafael R. Fuertes y José E. Nieves Trilla,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Allá para el 16 de marzo de 1954 el peticionario radicó ante el Negociado de Permisos una solicitud interesando autorización para ampliar un edificio residencial de dos plantas mediante la construcción de un mirador de 17′ por 21′, y para fabricar un edificio accesorio de 21′ 6″ por 25′ 0″, de dos plantas y de hormigón armado, con facilidades para dos garajes en la planta baja, y salón-biblioteca con dormitorio y servicio sanitario en la segunda planta. En 15 de abril del mismo año su solicitud fué denegada por el Oficial de Permisos, fundado en que—así se hizo constar en la notificación denegatoria—(1) la primera planta del edificio a ser ampliado se usa para almacén, lo cual resulta inconforme al art. 34 del Reglamento de Zonificación, que limita el uso de los edificios en el distrito donde ubica la propiedad únicamente a uso residencial; (2) la edificación accesoria en el lateral izquierdo (sic), esquina posterior, observa una separación de sólo tres pies del edificio principal, lo cual resulta inconforme al art. 21 del Reglamento de Zonificación, que requiere que cuando los edificios accesorios sean construídos hasta la línea del solar los mismos habrán de estar separados del edificio principal por una distancia no menor de uno y medio metros, o sea, cinco pies; y (3) el patio lateral iz-

quierdo es de sólo 6′ 6″ de ancho, lo cual resulta inconforme al art. 36(4) del Reglamento de Zonificación que requiere dos patios laterales con un ancho no menor de tres metros cada uno.

De esa denegatoria el peticionario apeló para ante la Junta de Planificación y en 16 de junio siguiente dicha Junta confirmó la decisión del Oficial de Permisos. Solicitada reconsideración, la misma fué denegada. Los fundamentos de las resoluciones denegatorias de la Junta fueron (1) que la propiedad en cuestión radica en un distrito residencial R-5, no obstante lo cual la primera planta del edificio se usa para almacén de una tienda por departamentos, cuyo uso no está permitido por el art. 34 del Reglamento de Zonificación en distritos de tal naturaleza;(¹) (2) que el art. 80 del Reglamento de Zonificación no permite la construcción de ampliaciones a edificios o pertenencias dedicadas a usos no conformes, a menos que tal uso del edificio o pertenencia no conforme se cambie por un uso que sea conforme con dicho Reglamento; (3) que el peticionario no ha indicado su disposición a eliminar el uso no conforme del edificio; y (4) que no existen circunstancias especiales que ameriten la concesión del permiso solicitado.

---

(¹) Para la época en que empezó a regir el Reglamento de Zonificación la planta baja del edificio se utilizaba como almacén. En vista de ello, dicha planta se siguió usando para el mismo fin. A este respecto el art. 77 de ese Reglamento dispone:

"Excepto según dispuesto en los Artículos 81 y 82, todo edificio o pertenencia que no se ajuste a esta reglamentación, pero que existía legalmente para la fecha de vigencia del Mapa de Zonificación correspondiente, las enmiendas al mismo, o un Mapa Oficial para el área en que está situado, podrá seguirse usando para el mismo fin para el cual se usaba y hasta donde se usaba en tal fecha."

Se ha resuelto que "las ordenanzas de zonificación no tienen por objetivo que los usos no conformes preexistentes sean perpetuos"; y que "un uso no conforme es un uso legal existente para la fecha en que tiene efectividad la restricción impuesta por la zonificación, que continúa a partir de esa fecha en inconformidad con la ordenanza"—*City of Los Angeles* v. *Gage*, 274 P.2d 34 (Cal., 1954). También, que "el espíritu que inspira toda Ley de Zonificación es restringir más bien que aumentar cualquier uso no conforme." *State* v. *Casper*, 68 A.2d 545 (N. J., 1949).

Dentro del término fijado por el art. 26 de la Ley de Planificación—núm. 213 de 12 de mayo de 1942 (págs. 1107, 1133), según quedó enmendado por la núm. 434 de 14 de mayo de 1951 (págs. 1227, 1241)—el peticionario acudió ante nos con un Recurso de Revisión. Sostiene en la petición radicada al efecto, luego de exponer los hechos pertinentes, que las resoluciones de la Junta recurrida son erróneas y contrarias a derecho:

"*a*. Porque se trata de un edificio de uso mixto, es decir, que su primera planta es de uso no conforme mientras que su segunda planta es de uso conforme.

"*b*. Porque con lo anterior como base, es permisible la construcción de un mirador como ampliación a la segunda planta que tiene un uso conforme, ya que las características estructurales de dicha ampliación cumplen con todos los requisitos de ley en cuanto a altura, área, patios, etc., aparte de que se dedicará también a uso conforme.

"*c*. Porque el propuesto edificio accesorio también cumple con todos los requisitos de ley en cuanto a sus características estructurales, altura, área, tamaño del solar, etc.; y se dedicará a uso conforme con la zonificación, estando completamente desvinculado, en su aspecto físico y en el de su propuesto uso, de la primera planta del edificio principal que es la tocada de uso no conforme.

"*d*. Porque las construcciones propuestas reducen o aminoran el por ciento de inconformidad actual para la totalidad del edificio tal y como ahora existe y tiende a que un por ciento mayor del mismo quede dentro de normas de conformidad.

"*e*. Porque las dos propuestas construcciones posan diferentes problemas que deben ser resueltos separadamente, ya que una se refiere a una ampliación al edificio existente, mientras que la otra se refiere a un edificio accesorio separado de aquélla.

"*f*. Porque la denegación de dicho permiso de construcción no redunda en la protección de la salud o seguridad pública, le niega al peticionario el uso más aprovechado y conveniente de su propiedad, lo que equivale a privarle de su propiedad sin el debido procedimiento de ley, en violación de la Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico."

Librado por nosotros el auto interesado, las partes radicaron un escrito en el cual estipulan como ciertos los siguientes hechos:

"(*a*) El solar y edificios a que se refiere este caso radican en la calle Ernesto Cerra número 619, Santurce, Puerto Rico, que es un distrito residencial de apartamientos clasificado como R-5 de acuerdo con el Mapa de Zonificación de San Juan.

"(*b*) La primera planta de este edificio se usa para almacén y resulta ser una de uso no conforme legal de acuerdo con el art. 77 del Reglamento de Zonificación.

"La segunda planta y los actuales edificios accesorios ubicados en el patio se usan para fines conformes con el Reglamento.

"(*c*) Dicha primera planta es totalmente de hormigón armado, incluyendo pisos, paredes y techo; no se comunica interiormente con la segunda planta y queda completamente independiente de ésta para todos fines.

"(*d*) Los edificios accesorios existentes en ·el patio también quedan completamente independientes y separados de la primera planta no conforme y se usan para fines conformes, o sea, en relación con la vivienda de la segunda planta.

"(*e*) Las edificaciones que el recurrente se propone hacer y que motivan este recurso consisten de un mirador sobre la segunda planta y de la construcción de un edificio accesorio en el patio.

"(*f*) Las propuestas edificaciones no tocan parte alguna de la primera planta ni se usarán en relación con ella y sí para fines conformes con el Reglamento, o sea, para fines de la vivienda de la segunda planta, en donde reside el dueño, aquí recurrente.

"(*g*) Las no conformidades al Reglamento de Zonificación apuntadas por el Oficial de Permisos en cuanto a patios y a separación entre el edificio principal y los accesorios no están en controversia en este caso, ya que el recurrente se allanó a modificar sus planos y corregir dichas deficiencias.

"(*h*) La única objeción que levanta la recurrida a la aprobación del permiso de construcción en este caso es que el recurrente no ha indicado su disposición de eliminar el uso no conforme de la primera planta como requisito previo a la concesión del permiso."

 Discutiremos ahora en el orden en que han sido expuestos los errores imputados por el peticionario a la Junta recurrida. El hecho de que el edificio sea uno de uso mixto, es decir, que la planta baja sea de uso no conforme, por estar dedicada a almacén, y la segunda planta sea de uso conforme, por utilizarse para residencia, no altera en forma alguna la conclusión a que debe llegarse. El art. 23 de la Ley 213 de 1942, según ha sido enmendado por la núm. 434 de 1951, pág. 1235, dispone de manera clara y terminante que: ". . . A partir de la vigencia de los Reglamentos de Zonificación . . . no podrá usarse ningún terreno o edificio, ni ninguna parte de los mismos, como no sea de conformidad con dichos Reglamentos y de acuerdo con el permiso que se conceda por el Oficial de Permisos de acuerdo con los Reglamentos de Zonificación y con esta ley, *o para el mismo fin para el cual se usaba, y hasta donde se usaba, en la fecha cuando entraron en vigor dichos reglamentos.*" (²) (Bastardillas nuestras.) En armonía con la autorización concedídale por el legislador, la Junta recurrida aprobó un Reglamento de Zonificación, que fué promulgado con fecha 22 de mayo de 1946. Según el art. 1, inciso 50, de ese Reglamento *un edificio no conforme es aquél* "que no esté en armonía con las disposiciones de esta reglamentación aplicables al distrito o zona en que esté localizado." Así pues, a tenor de ese precepto del Reglamento, el edificio aquí envuelto debe ser considerado en su totalidad como uno de uso no conforme, a pesar del hecho de que como cuestión de realidad solamente parte del mismo (la planta baja) se utiliza para un uso no conforme.

Las características estructurales de la ampliación que intenta hacer el peticionario puede que cumplan con todos los requisitos de ley en cuanto a altura, área, patios, etc., mas esto no es decisivo ni obliga de por sí a la Junta a conce-

---

(²) Véase el art. 77 del Reglamento de Zonificación, citado en el escolio 1.

derle el permiso interesado. Ello es así debido a que de acuerdo con el art. 80 del propio Reglamento de Zonificación antes citado "no podrán realizarse *ampliaciones o alteraciones estructurales* a edificios o pertenencias dedicadas a usos no conformes, a menos que tal uso del edificio o pertenencia no conforme se cambie por un uso que sea conforme a esta reglamentación."(3) (Bastardillas nuestras.) El contexto de ese artículo es meridianamente claro. Siendo el edificio del peticionario uno clasificado en su totalidad como no conforme, en él no pueden hacerse legalmente ampliaciones o alteraciones estructurales—como las interesadas por el recurrente—a menos que el edificio, en su totalidad, se cambie por un uso que sea conforme. Nada hay en los autos que demuestre que el peticionario ha eliminado o se propone eliminar de inmediato el almacén que existe en la planta baja del edificio aquí envuelto o que está dedicando o se propone dedicar en el futuro próximo el local ocupado por el almacén a un uso residencial. La resolución de la Junta a este respecto estuvo, por tanto, ajustada a derecho.

Cuanto acabamos de decir es igualmente aplicable al edificio accesorio cuya construcción se interesa. Ya hemos visto que de acuerdo con el art. 80 del Reglamento no podrán realizarse ampliaciones o alteraciones estructurales a edificios o pertenencias dedicadas a usos no conformes, etc., y que interpretándolo hemos concluído que no procede autorizar una ampliación al edificio principal. El edificio accesorio sería una unidad independiente de aquél.(4) De acuerdo con la definición que de la palabra "pertenencia"

---

(3) El art. 6(1) del Reglamento de Zonificación dispone, además, que: "No se expedirá permiso de edificación alguno para la erección, ampliación, alteración, acondicionamiento para determinado fin o traslado de cualquier edificio, a menos que la pertenencia existente o propuesta, preparada o diseñada para ser ocupada, sea conforme a las disposiciones de este Reglamento."

(4) El art. 1, inciso 15, del Reglamento de Zonificación define "edificio accesorio" como "un edificio separado del edificio principal y que contiene uno o más usos accesorios."

nos da el inciso 42 del art. 1 del propio Reglamento, (⁵) tanto el solar sobre el cual se construiría el edificio accesorio como éste mismo resultarían ser "pertenencias" y por disposición expresa del art. 80, supra, en las "pertenencias" dedicadas a usos no conformes no pueden realizarse ampliaciones o alteraciones estructurales. La construcción de tal edificio accesorio sería una alteración estructural. Véase el art. 1, inciso 1, del Reglamento, supra, preceptivo de que por "alteraciones estructurales" se entiende "...cualesquier adiciones, extensiones, aumentos o variaciones de tamaños de los elementos estructurales existentes . . ."

El caso de *Bartkus* v. *Albers*, 208 N. W. 260 (Wisc., 1926) (⁶) citado por el peticionario no le ayuda, a nuestro juicio, en forma alguna, ya que si bien en lo que al edificio accesorio concierne el problema allí envuelto era similar al

---

(⁵) El inciso 42 del art. 1 del Reglamento de Zonificación define la palabra "pertenencia" del siguiente modo:

"Un solar, estructura o edificio, o la unidad comprendida por el solar y cualesquiera edificios o estructuras que pudieran estar situados en el mismo."

(⁶) Los hechos envueltos en el caso de *Bartkus* v. *Albers*, supra, fueron los siguientes: el recurrente era dueño de un edificio de dos plantas situado en la ciudad de Kenosha. En enero de 1924 él utilizaba la planta baja del mismo como almacén y la segunda planta para residir en ella con su familia. De conformidad con una ordenanza de zonificación aprobada por la ciudad de Kenosha en el mes y año indicados, la propiedad del recurrente correspondía a un distrito residencial. Según esa ordenanza el uso de un edificio en ese distrito residencial para fines de almacén era considerado como un uso no conforme. La ordenanza, sin embargo, otorgó al recurrente el·derecho a continuar el uso no conforme, toda vez que· el edificio se utilizaba como almacén al momento en que se adoptó la misma. En mayo de 1925 el recurrente solicitó permiso para construir un anexo de madera, de una sola planta, en la parte trasera del edificio en que · tenía su almacén. En su solicitud decía que el anexo se utilizaría para fines residenciales. El Oficial de Permisos denegó su solicitud. El Tribunal Supremo de Wisconsin al resolver el recurso manifestó en el curso de su opinión que:

"La única cuestión envuelta en el caso es si mediante la construcción del anexo en perspectiva el recurrente violará cualquiera de las disposiciones de la ordenanza de zonificación. La intención clara expresada por esa ordenanza es que no se levantará ninguna nueva estructura en esta área residencial que no cumpla con las disposiciones de la·ordenanza o que vaya a dedicarse a un uso no conforme. Es igualmente claro que

que nos ocupa, sin embargo, de la opinión en él emitida no se desprende la forma en que estaba concebida la ordenanza en aquél interpretada. Las disposiciones de nuestro Reglamento de Zonificación antes citadas son enteramente claras y las mismas resultan adversas a las contenciones del peticionario, tanto en relación con la ampliación del edificio principal como en lo que respecta a la construcción del edificio accesorio.

La contención del peticionario al efecto de que las construcciones reducen o aminoran el por ciento de inconformidad actual para la totalidad del edificio tal y como ahora existe, carece de eficacia. Es natural que si se le permitiera construir el mirador en cuestión, el por ciento del área total del edificio dedicada a uso no conforme sería menor. Empero, el área dedicada a uso no conforme seguiría siendo la misma, y según ya hemos indicado, de acuerdo con el art. 1, inciso 50, del Reglamento basta que parte de un edificio esté dedicada a un uso no conforme para que la totalidad del mismo sea considerada como de esa clase de uso y para que,

no hubo la intención de obligar a que se destruyeran los edificios existentes al momento de aprobarse la ordenanza, o de compeler a los dueños u ocupantes de edificios a que dejaran de usar los edificios existentes para aquellos fines legales a que los dedicaban al momento de tener efectividad la ordenanza. El recurrente, por tanto, tiene derecho a continuar explotando su almacén en la propiedad en cuestión, mientras limite su negocio de almacén al edificio existente al momento de adoptarse la ordenanza. Mas no tiene derecho a extender ese negocio a ninguna nueva estructura que se erija en su propiedad. La solicitud dice que la nueva estructura será utilizada para fines residenciales. Mientras esta nueva estructura se use para tales fines no habrá violación alguna a la ordenanza. El anexo en perspectiva está de la calle a más de la distancia exigida. No requiere cambios estructurales en un edificio existente con el fin de ampliar un uso no conforme. El hecho de que la nueva estructura se levante en la parte posterior del edificio de almacén y de que se comunique con éste por una puerta, puede haber inducido a aquéllos que actuaron a nombre de la ciudad a concluir que esta nueva estructura iba a utilizarse para fines del almacén. Pero la única prueba que figura en los autos es la aseveración del dueño de que desea usar esta estructura para fines residenciales. Si en el futuro esa nueva estructura se utiliza como parte del almacén existente, o para cualquier otro uso no conforme, las cortes poseen amplios poderes para impedir semejante violación a la ordenanza de zonificación."

según el art. 80 del mismo Reglamento, no puedan efectuarse ampliaciones o alteraciones estructurales a ese edificio.

■ Discrepamos del peticionario en cuanto a que las dos propuestas construcciones presentan problemas distintos. El art. 80 del Reglamento, supra, conforme se ha visto, es de aplicación tanto a la ampliación del edificio principal como a la construcción del edificio accesorio.

■ Los reglamentos de zonificación son generalmente adoptados teniendo en mente como objetivo primordial el que la salud, moral, seguridad y bienestar general de la comunidad no sean menoscabados ni puestos en peligro. Sin embargo, en casos como el que nos ocupa la cuestión fundamental, si no única, a ser resuelta por nosotros es si la Junta actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. 147 A.L.R. 167 y casos citados a la pág. 168. No creemos que haya habido tal arbitrariedad, ilegalidad o abuso de discreción. La conclusión de la Junta fué una sabia interpretación de las disposiciones citadas de su Reglamento.

■ En *Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 71 L.Ed. 303, 54 A.L.R. 1016 (1926), el Tribunal Supremo de los Estados Unidos resolvió que ordenanzas que contenían disposiciones similares a las que aquí están envueltas y que figuran en el Reglamento de Zonificación aprobado por la Junta querellada, resultan ser enteramente constitucionales. Estamos de acuerdo con ese criterio. El mismo ha seguido siendo sostenido por la jurisprudencia. Véanse las anotaciones que figuran en 54 A.L.R. 1030 y 64 A.L.R. 920.

*Las resoluciones recurridas deben ser confirmadas.*(⁷)

---

(⁷) Los arts. 1(1), (15), (42), 34 y 80 del Reglamento de Zonificación de 1946 a que se hace referencia en el curso de la opinión equivalen a los artículos 1.00(4), (21), (50), 40.00 y 115.00 del nuevo Reglamento de Zonificación aprobado por la Junta de Planificación con fecha 22 de junio de 1955 y promulgado de acuerdo con la ley el 13 de julio siguiente.